# TRAUB LIEBERMAN
## STRAUS & SHREWSBERRY LLP

NEW YORK | NEW JERSEY | FLORIDA

JAN 07 2008

Mid-Westchester Executive Park
Seven Skyline Drive
Hawthorne, New York 10532

Telephone (914) 347-2600
Facsimile  (914) 347-8898
www.traublieberman.com

January 3, 2008

Hon. Kenneth M. Karas
United States District Judge
United States District Court, Southern District of New York
300 Quarropas Street, Chambers 533
White Plains, New York 10601-4150

**MEMO ENDORSED**

Re:  *Rod Eddie, Paula Eddie and McClintock Realty, Inc. v. Scottsdale Ins. Co.*
     07 Civ. 3457 (WP4) (KMK) (MDF)

Dear Judge Karas:

This firm represents the defendant Scottsdale Insurance Company ("Scottsdale") in the above referenced action. In accordance with Your Honor's individual rules, this shall serve as Scottsdale's request for a pre-motion conference. Scottsdale seeks leave to file a motion for summary judgment under Rule 56 dismissing plaintiffs' complaint in its entirety on the grounds that the "Occupancy Endorsement" contained in the insurance policy issued by Scottsdale to plaintiffs, McClintock Realty, Rod Eddie and Paula Eddie, bars coverage for the instant fire loss.

This breach of contract action arises out of an August 1, 2006 fire loss to a two-family dwelling located at 1057 State Road, Walden, New York 12586 ("subject premises"). In the Complaint, plaintiffs seek compensation for the destruction of the subject premises estimated at $342,464.00, and for "demolition expenses in excess of $20,000." After conducting its investigation into the alleged fire and obtaining Mr. Eddie's Examination Under Oath, Scottsdale denied coverage for this claim on the grounds that, *inter alia,* the Occupancy Endorsement precluded coverage under the policy. The instant coverage action followed. Discovery in this action was completed on December 5, 2007.

Scottsdale issued a dwelling policy, number DFS 0561603, to McClintock Realty, Rod Eddie and Paula Eddie, for the period January 1, 2006 to January 1, 2007, for the location described on the Declarations sheet as "1057 State Rd., Walden, NY 12586 - Loc #1: Two Family, Frame - Tenant Occupied Dwelling; Loc #2: One Family, Frame Dwelling Used For Storage." The subject fire took place in the two family dwelling (Location #1). Location #1 is subject to limits of liability of $300,000 (including vandalism or malicious mischief) and a deductible of $2,500. This policy, as it relates to Location #2, was cancelled prior to the date of loss. Location #2 is not at issue in this action. This named perils policy covers loss caused by fire. The policy's Occupancy Endorsement reads as follows:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**OCCUPANCY ENDORSEMENT**

USDS SDNY
DOCUMENT

Page 2

> **It is a condition of this policy that the described building must be occupied at the inception date of the policy. It is a further condition of this policy that any vacancy or unoccupancy of the described building after the inception date of the policy must be reported to the Company within thirty (30) days.**
>
> **The Company shall not be liable for loss occurring while a described building, whether intended for occupancy by owner or tenant, is vacant, or unoccupied for more than sixty (60) consecutive days immediately before the loss.**

Here, the testimony reflects that the Eddies purchased the subject premises, consisting of a two-family dwelling house with attached garage and a separate, unattached garage, in October of 2005. At that time, there were tenants living in the two-family dwelling house. The last of these tenants moved out of the home in February or March of 2006. Mr. Eddie testified that it was his intention to use the subject premises for his businesses once the tenants moved out. According to the Eddies, from the time the last of the tenants moved out until the time of the fire on August 1, 2006 (at least 123 days), no one resided in the home. Rather, during this time period, use of the home was confined to the attached garage for the purpose of storing Mr. Eddie's business equipment and tools. Mr. and Mrs. Eddie did not authorize or observe anyone living, sleeping, or otherwise using the home for any other purpose following the tenants' departure. The Eddies did not live or sleep in the home at any time prior to the fire. From the time the Eddies purchased the property until the time of the fire, no additions or renovations were made to the home. Once the tenants moved out, no running appliances were left in the home. Indeed, Mr. Eddie testified that he nailed the doors to the house shut to prevent anyone from entering the home. The subject fire, which allegedly began in the second-floor back bedroom of the home, was reportedly started when a lamp being used to dry marijuana caused a mattress in the room to ignite. The Eddies' deny knowledge or involvement with regard to the fire.

The threshold issue is whether use of the attached garage for the purpose of storing Mr. Eddie's business equipment and tools is sufficient to render the subject dwelling occupied and/or not vacant within the meaning of the policy. In the seminal case of *Hermann v. The Adriatic Fires Insurance Co.*, 85 N.Y. 162 (1881), the Court of Appeals held that for a dwelling to be occupied **"*it must be used by human beings as their customary place of abode, not absolutely and uninterruptedly continuous, but that must be the place of usual return and habitual stoppage.*"** *Id.* at 169 [emphasis added]. In *Hermann*, plaintiff purchased a fire insurance policy for buildings on his farm, including the main dwelling house used by plaintiff as a summer residence. The insurance policy contained a condition declaring it void if the premises became "vacant or unoccupied" for more than 30 days without notice or consent of the insurer in writing. Plaintiff and his wife were living in the main dwelling house at the time the policy was issued. They left the house in November to return to the city, leaving their summer clothes and furniture in the home. Plaintiff left the main dwelling in charge of a farmer who lived in the farm house on the premises. The farmer would enter the dwelling once a week to look around and air out the home. Plaintiff and his wife would visit the main dwelling house every two weeks to check on things and to have lunch, but would not sleep there. The following April the dwelling was destroyed by fire. Plaintiff and his wife had visited the dwelling three days prior to the



fire. In finding that the dwelling house was not occupied within the meaning of the policy, the Court of Appeals stated that weekly inspections and visits to the main dwelling "fell short of being occupation of it." *Id.*

Likewise, in the more modern-day case of *Coutu v. Exchange Insurance Co.*, 579 N.Y.S.2d 751 (3d Dep't 1992), the Appellate Division, Third Department, held that ***"it is the regular presence of inhabitants that makes occupancy."*** *Id. at* 752 [emphasis added]. In *Coutu*, the defendant issued an insurance policy to the plaintiff providing coverage for various named perils for a building consisting of a restaurant and an apartment. The restaurant was operated by plaintiff's sons, who also lived in the apartment. When the restaurant ceased doing business in May 1988, the sons moved out near the end of July 1988. One son left personal belongings in the apartment and stayed there occasionally until late January 1989. Thereafter, he would inspect the premises from time to time. In March 1989, trespassers broke in and vandalized the restaurant and the apartment. The insurer denied coverage based on an exclusion that excluded coverage for damage caused by vandalism if the building had been "vacant or unoccupied" over 30 consecutive days immediately preceding the loss. The Appellate Division held that the words "vacant or unoccupied," as stated in the disjunctive, must be considered separately so that either word may trigger the exclusion. *Id. at* 752. In giving "unoccupied" its ordinarily accepted meaning, the Appellate Division held that the ***use of the building for storage did not create occupancy and thus there had been no showing of "occupancy" of the building within the crucial 30-day period***. *Id.* (emphasis added). Accordingly, the policy's vacancy/occupancy exclusion was applied to bar coverage for the loss. *See also Halpin v. Phenix Ins. Co.*, 118 N.Y. 165 (1889) ("a dwelling house will not be regarded as occupied unless it is the home or dwelling of some person . . ."); *Waters v. NYPIUA, et al.*, 9 Misc. 3d 1126A (NY Sup. Ct. 2005) (for a dwelling to be "owner occupied" requires actual use of a dwelling and the fact that plaintiffs neither lived in the dwelling, nor used the dwelling other than storing some furnishings, mowing the lawn, playing on the grounds occasionally with their children and as a guest house, is inconsistent with "owner occupied" and/or occupancy); *Lamoureuz v. New York Central Mutual Fire Ins. Co.*, 663 N.Y.S.2d 914 (3d Dep't 1997); *Page v. Nationwide*, 223 N.Y.S.2d 573 (3d Dep't 1962) ("It is the regular presence of inhabitants that makes occupancy . . . the mere renovation of a house with no one staying there during the process does not make out occupancy); *Hattie v. The Pioneer Co-operative Fire Ins. Co.*, 183 A.D. 826 (3d Dep't 1918) (for a dwelling house to be in a state of occupation there had to be in it the presence of human beings as their customary place of abode), *citing Huber v. Manchester Fire Assurance Company*, 92 Hun. 223 (same holding).

Under *Hermann* and its progeny, Mr. Eddie's use of the attached garage for storage of his business equipment and tools does not rise to the level of occupancy as defined by the courts. Moreover, the fact that the doors to the home were nailed shut and there was no running appliances left in the house is inconsistent with the dwelling being "tenant occupied" and/or "used principally for dwelling purposes" as set forth in the policy. Accordingly, this Court should follow the holdings of *Hermann* and its progeny and dismiss plaintiffs' complaint in its entirety based on the applicability of the Occupancy Endorsement.

For the foregoing reasons, Scottsdale respectfully requests that the Court schedule a pre-motion



Page 4

conference. Scottsdale is prepared to file and serve its proposed motion for summary judgment immediately or upon any briefing schedule convenient for the Court.

Thank you for your consideration of this request.

                    Respectfully submitted,

                    *Meryl K. L____*

                    Meryl R. Lieberman, Esq. (ML 7317)
                    Dawn M. Warren, Esq. (DW 5112)

cc:    Basch & Keegan
       307 Clinton Avenue
       P.O. Box 4235
       Kingston, New York 12402
       (845) 338-8884

       Attention:   Eli B. Basch, Esq.
                          Derek Spada, Esq.

*The Court will hold a pre-motion conference on February __, 2008, at 10:30. Plaintiffs are required to respond to this letter by February 1, 2008.*

SO ORDERED
KENNETH M. KARAS U.S.D.J.
1/22/08

TRAUB LIEBERMAN
TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP