UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
ROD EDDIE, PAULA EDDIE and McCLINTOCK                     Docket No.  07-CV-3457
REALTY, INC.                                             (WP4) (MDF) (KMK)

                              Plaintiffs,

            -against-

SCOTTSDALE INSURANCE COMPANY,

                              Defendant.
-----------------------------------------------------------------------X


## REPLY MEMORANDUM OF LAW IN SUPPORT OF SCOTTSDALE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT


                    TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP
                    *Attorneys for Defendant Scottsdale Insurance Company*

                    Meryl R. Lieberman (ML7317)
                    Dawn M. Warren (DW5112)
                    Mid-Westchester Executive Park
                    Seven Skyline Drive
                    Hawthorne, New York 10532
                    Tel. No. (914) 347-2600

## <u>TABLE OF CONTENTS</u>

FACTS OF CASE ................................................................. 1

ARGUMENT ..................................................................... 2

    I.      SCOTTSDALE'S MOTION FOR SUMMARY JUDGMENT SHOULD BE
            GRANTED BECAUSE THE SUBJECT DWELLING WAS NOT "TENANT
            OCCUPIED" AT THE TIME OF THE FIRE LOSS AS REQUIRED UNDER
            THE POLICY ................................................................. 2

    II.     SCOTTSDALE'S MOTION FOR SUMMARY JUDGMENT SHOULD BE
            GRANTED BECAUSE USE OF THE DWELLING FOR COMMERCIAL
            STORAGE IS INCONSISTENT WITH THE DWELLING BEING
            "PRINCIPALLY USED FOR DWELLING PURPOSES," "OCCUPIED" OR
            "NOT VACANT" WITHIN THE MEANING OF SCOTTSDALE'S
            DWELLING POLICY AS A MATTER OR LAW ........................ 5

# TABLE OF AUTHORITIES

**Cases**

*2619 Realty, LLC v. Fidelity and Guaranty Ins. Co.,*
   303 A.D.2d 299, 756 N.Y.S.2d 564 (1st Dep't 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Board of Education, Yonkers School District v. CNA Insurance, et al.,*
   647 F. Supp. 1495, 1986 U.S.Dist. LEXIS 17507 (S.D.N.Y. 1986) . . . . . . . . . . . . . . . . . . 2, 3

*Coutu v. Exchange Insurance Co.,*
   174 A.D.2d 241, 579 N.Y.S.2d 751 (3d Dep't 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 9

*Economou v. Butz,*
   466 F. Supp. 1351, 1357 (S.D.N.Y. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Economou v. U.S. Dep't of Agric.,*
   633 F.2d 203 (2d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Gallo v. Travelers Property Casualty,*
   21 A.D.3d 1379, 801 N.Y.S.2d 849 (4th Dep't 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Halper v. Aetna Life Ins. Co. of Hartford, Connecticut,*
   42 Misc. 2d 184, 247 N.Y.S.2d 400 (N.Y. Misc., 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*Hermann v. The Adriatic Fires Ins. Co.,*
   85 N.Y. 162, 1881 NY LEXIS 65 (1881); . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8-10

*Lamoureux v. New York Central Mut. Fire Ins. Co.,*
   244 A.D.2d 645, 663 N.Y.S.2d 914 (3d Dep't 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

*McCarthy v. New York Property Ins. Underwriting Ass'n,*
   158 A.D.2d at 962 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*McGrail v. Equitable Life Assur. Soc.*
   292, N.Y. 419, 55 N.E.2d 483 (1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-4

*Montessi v. American Airlines, Inc.,*
   935 F.Supp. 482, 1996 U.S. Dist. LEXIS 12803 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . 10

*Mutual Fire Ins. Co. of Calvert County v. Ackerman, et al.,*
   162 Md. App. 1, 872 A.2d 110 (Md. Ct. Spec. App. 2005) . . . . . . . . . . . . . . . . . . . . . . . 5-7

*Old Republic Ins. Co. Inc. v. Landauer Assoc. Inc.,*
  1989 U.S. Dist. LEXIS 13422 (S.D.N.Y. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Page v. Nationwide,*
  15 A.D.2d 306, 223 N.Y.S.2d 573 (3d Dep't 1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

*Seaboard Surety Co.,*
  64 N.Y.2d at 311 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Thieme v. Niagara Fire Ins. Co.,*
  100 A.D. 278, 91 N.Y.S. 499 (1st Dep't 1905) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

*Vigilant Ins. Co. v. V.I. Techs.,*
  253 A.D.2d at 402 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Wang v. New York City Department of Correction,*
  1994 U.S. Dist. LEXIS 5010, 92 Civ. 0541, 1994 WL 150823,
  *4 (S.D.N.Y. April 20, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Zuckerman v. City of New York, et al.,*
  49 N.Y.2d 557, 427 N.Y.S.2d 595 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Statutes**

Rule 56 of the Federal Rules of Civil Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

ROD EDDIE, PAULA EDDIE and McCLINTOCK                    Docket No. 07-CV-3457
REALTY, INC.                                            (WP4) (MDF) (KMK)

                                Plaintiffs,

            -against-

SCOTTSDALE INSURANCE COMPANY,

                                Defendant.
------------------------------------------------------------------X

## REPLY MEMORANDUM OF LAW IN SUPPORT OF SCOTTSDALE INSURANCE
## COMPANY'S MOTION FOR SUMMARY JUDGMENT

        Defendant Scottsdale Insurance Company ("Scottsdale") submits this Reply Memorandum

in further support of its motion seeking an Order, pursuant to Rule 56 of the Federal Rules of Civil

Procedure, granting summary judgment on behalf of Scottsdale and dismissing plaintiffs' complaint

in its entirety, together with such other and further relief that this Court deems just and proper, on

the ground that plaintiffs have failed to state a cause of action against Scottsdale and there are no

material issues of fact which warrant a trial in this action.[1]

### FACTS OF CASE

        All material facts (and citations with respect thereto) are set forth with particularity in

Scottsdale's Rule 56.1 Statement of Undisputed Facts ("Scottsdale's Statement") and Scottsdale's

Rule 56.1 Reply Statement of Undisputed Facts ("Scottsdale's Reply Statement"). To avoid

redundancy, the facts are discussed in this memorandum where necessary for emphasis and

---

[1] Pursuant to the Hon. Judge Kenneth M. Karas' Order dated May 2, 2008, plaintiffs' cross-motion for summary judgment was denied without prejudice for failure to comply with the Court's rules of individual practice. Accordingly, the Court Ordered that Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiffs' Cross-Motion for Summary Judgment dated April 22, 2008 ("Plaintiffs' Memorandum"), shall be deemed only to oppose Defendant's motion for summary judgment.

elucidation of the legal arguments that support summary judgment.

## **ARGUMENT**

### **I.**

### **SCOTTSDALE'S MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE THE SUBJECT DWELLING WAS NOT "TENANT OCCUPIED" AT THE TIME OF THE FIRE LOSS AS REQUIRED UNDER THE POLICY**

Scottsdale's Dwelling Policy does not provide coverage for the instant fire loss because the dwelling was not "Tenant Occupied" at the time of the fire as specifically required under the policy's insuring agreement. Scottsdale's Dwelling Policy states that it provides coverage only when the dwelling is "Tenant-Occupied." (See Scottsdale's Statement at ¶¶ 35 and 36). Specifically, under the section "Coverages," subsection "Coverage A- Dwelling," the policy plainly states that Scottsdale covers "the dwelling on the Described Location shown in the Declaration, used principally for dwelling purposes." (Id. at ¶ 36). The Declarations identify the Described Location as "1057 State Rd., Walden, NY 12586 - Loc #1: Two Family, Frame - **Tenant Occupied Dwelling**." (Id. at ¶ 35).

It is well settled that courts must determine the rights and obligations of parties under an insurance contract based on the specific contract language. See e.g., McGrail v. Equitable Life Assur. Soc. 292, N.Y. 419, 55 N.E.2d 483 (1944); Board of Education, Yonkers School District v. CNA Insurance, et al., 647 F. Supp. 1495, 1986 U.S.Dist. LEXIS 17507 (S.D.N.Y. 1986); Old Republic Ins. Co. Inc. v. Landauer Assoc. Inc., 1989 U.S. Dist. LEXIS 13422 (S.D.N.Y. 1989); Halper v. Aetna Life Ins. Co. of Hartford, Connecticut, 42 Misc. 2d 184, 247 N.Y.S.2d 400 (N.Y. Misc., 1964). Rules for the construction of contracts of insurance do not differ from those to be applied to the construction of other contracts. See Board of Education, Yonkers School District v.

2

CNA Insurance, et al., 647 F. Supp. 1495. "When terms used are clear and unambiguous, they are generally to be taken and understood in their plain, ordinary and proper sense." Halper v. Aetna Life Ins. Co. of Hartford, Connecticut, 42 Misc. 2d at 186. A word's ordinary meaning is the meaning that a reasonably prudent layperson would give to the term. Id. "The Court may not 'disregard clear provisions which the insurer inserted in the policies and the insured accepted, and equitable considerations will not allow an extension of coverage beyond its fair intent and meaning.'" Board of Education, Yonkers School District v. CNA Insurance, et al., 647 F. Supp. at 1502. The construction of unambiguous provisions in an insurance policy is solely as question of law for the court. Id. On the other hand, a court will construe the insurance contract strictly against the insurer and more favorably to the insured only when there is an unexplained ambiguity in the language of the policy. Halper v. Aetna Life Ins. Co. of Hartford, Connecticut, 42 Misc. 2d 184, 186.

In the case of McGrail v. Equitable Life Assur. Soc., 292 N.Y. at 424, the Court of Appeals stated that "[c]onsistently followed in this State has been the rule that the policy must be construed reasonably and that it must be given a practical construction, not thereby with the result that there is a revision of the policy or an increase of the risk and thus an extension of the resulting liability, but for the purpose of determining what the parties must reasonably have intended by its terms when the policy was written by the defendant and accepted by the plaintiff." Id.

In the instant case, plaintiffs do not dispute the plain and intended meaning of the term "Tenant Occupied Dwelling" as used in the policy. Moreover, plaintiffs concede that from date the last of plaintiffs' tenants moved out in February or March of 2006, until the time of the fire, at least 123 days, the dwelling was not occupied by tenants or used for residential purposes. (See Scottsdale's Statement and Plaintiffs' Rule 56.1 Counter-Statement of Facts at ¶¶17 and 21). Nor

3

did plaintiffs authorize or observe anyone living, sleeping or otherwise using the dwelling for any purpose. (Id. at ¶ 31). Rather, during this time period, Mr. Eddie and his employees used the property, including the dwelling's attached garage, to store Mr. Eddie's business equipment and materials (Id. at ¶ 25). Once the last of the tenants moved out, no appliances were left in the home and Mr. Eddie nailed the front door, back screen door and two doors leading from the house to the attached garage shut to prevent access into the home. (Id. at ¶¶ 22-23). These undisputed facts are clearly inconsistent with the dwelling being "Tenant Occupied." Moreover, the fact that tenants were not occupying the property at the time it burned definitely increased the physical hazard for trespassers to enter the building and for the building to be set on fire by third persons, which plaintiffs contend (albeit without submission of any admissible evidence) happened in this case. (Id. at ¶¶ 24 and 31). See also McGrail v. Equitable Life Assur. Soc., 292 N.Y. at 424

Based on the foregoing, coverage under Scottsdale Dwelling policy is clearly not triggered in the first instance because the dwelling was not "Tenant Occupied" at the time of the fire loss as required under the policy's insuring agreement. Accordingly, Scottsdale is entitled to summary judgment as a matter of law.

4

## ARGUMENT

## II.

### SCOTTSDALE'S MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE USE OF THE DWELLING FOR COMMERCIAL STORAGE IS INCONSISTENT WITH THE DWELLING BEING "PRINCIPALLY USED FOR DWELLING PURPOSES," "OCCUPIED" OR "NOT VACANT" WITHIN THE MEANING OF SCOTTSDALE'S DWELLING POLICY AS A MATTER OR LAW

Plaintiffs contend, without any relevant legal authority, that because the terms "principally used for dwelling purposes," "vacant" and "unoccupied" are not defined in the policy, they must be ambiguous and, thus, cannot be reasonably interpreted by a policyholder to mean that business usage of the premises cannot form the basis of occupancy. (See Plaintiffs' Memorandum of Law). This argument fails as a matter of law.

First, the courts of this State and others have consistently held that the terms "principally used for dwelling purposes," "vacant" and "unoccupied" as used in an insurance policy are clear and unambiguous, and thus have accorded these terms their usual, ordinary and accepted meanings. See e.g., Mutual Fire Ins. Co. of Calvert County v. Ackerman, et al., 162 Md. App. 1, 872 A.2d 110 (Md. Ct. Spec. App. 2005); Coutu v. Exchange Insurance Co., 174 A.D.2d 241, 579 N.Y.S.2d 751 (3d Dep't 1992); Hermann v. The Adriatic Fires Ins. Co., 85 N.Y. 162, 1881 NY LEXIS 65 (1881); Page v. Nationwide, 15 A.D.2d 306, 223 N.Y.S.2d 573 (3d Dep't 1962); Thieme v. Niagara Fire Ins. Co., 100 A.D. 278, 91 N.Y.S. 499 (1st Dep't 1905); Lamoureux v. New York Central Mut. Fire Ins. Co., 244 A.D.2d 645, 663 N.Y.S.2d 914 (3d Dep't 1997).

In the nearly factually-identical case of Mutual Fire Ins. Co. of Calvert County v. Ackerman, et al., 162 Md. App. 1, 872 A.2d 110, the insured purchased a one-year "Dwelling Property" insurance policy, which included coverage for loss of the house caused by fire. Under the section

5

"Coverages," and subsection "Coverage A-Dwelling," the policy provided that Mutual Fire covered "the dwelling on the Described Location, used principally for dwelling purposes*." This policy language is identical to Scottsdale's policy.* Like Scottsdale's policy, the Mutual Fire policy did not define "dwelling" or "principally for dwelling purposes." Id. In reversing the trial court grant's of summary judgment to the insured, the Court of Appeals of Maryland found that the undefined terms "dwelling" and used principally for "dwelling purposes" were not ambiguous and therefore accorded these terms their usual, ordinary and accepted dictionary meanings. Id. The court stated:

> The terms "dwelling" and dwelling purposes" are not defined under the policy. Therefore, we accord them their "usual, ordinary, and accepted meanings." [citations omitted]. *Random House* defines "dwelling" as "a building or place of shelter to live in, place of residence, abode, home." [citation omitted]. *Black's Law Dictionary* defines "dwelling-house" as "the house or other structure in which a personal lives; a residence or abode." [citation omitted]. "Purpose" is defined as "the reason for which something exists or is done, made, used, etc." [citation omitted]. 162 Md. App. 1.

In applying these dictionary definitions, the court held that evidence of the insured's intent to convert the house from residential to commercial, coupled with such factors as the house's uninhabitable condition and use of the house as a hangout for drug dealers, would allow one to infer that the home was not used as a "dwelling or "principally for dwelling purposes." See 162 Md. App. 1, 872 A.2d 110.

Here, as in Mutual Fire, plaintiffs purchased the home with the intention of converting the home from residential to commercial, which they did. (See Scottsdale's Statement and Plaintiffs' Rule 56.1 Counter-Statement of Facts at ¶¶ 12, 21 and 25). Likewise, once the last of the tenants moved out, the premises was left in a "rough" and uninhabitable condition. (See Exhibit "D" at p. 31, lines 16-18). Specifically, the home was left full of furniture, books, clothes, dishes, lawn mover

parts and other storage items belonging to the prior tenants. (Id. at p. 39, lines 4 -12 and p. 56, line 1-2; Exhibit "E," p. 18, lines 4-20). Mr. Eddie also observed rodents, beer bottles and rubbers inside the home, none of which were removed from the home prior to the fire. (See Exhibit "D" at p. 29, lines 2-5; p. 55, lines 3-10). Nor did plaintiffs perform any renovations or improvements to the home once the tenants moved out. (See Scottsdale's Statement and Plaintiffs' Rule 56.1 Counter-Statement of Facts at ¶33; see Exhibit "F," lines 16-20). As in Mutual Fire, once the last of the tenants moved out, the subject dwelling was being used for illegal drug purposes, i.e., to grow marijuana. (Id. at ¶ 19).

Based on the court's holding in Mutual Fire and plaintiffs' undisputed testimony in this case, it is clear that the subject dwelling was not being used for "dwelling purposes" at all. See Mutual Fire Ins. Co. of Calvert County v. Ackerman, et al., 162 Md. App. 1, 872 A.2d 110. See also 2619 Realty, LLC v. Fidelity and Guaranty Ins. Co., 303 A.D.2d 299, 756 N.Y.S.2d 564 (1st Dep't 2003) (holding that the term "sole *dwelling*" is clear and unambiguous and should be given its ordinary meaning, i.e. an individual's "exclusive *residence.*") (emphasis added). It would appear that plaintiffs misguidedly believe that a dwelling policy would cover their subsequent commercial use. Such is not the case.

Likewise, the New York courts have invariably held that the terms "unoccupied" and "vacant" as used in Scottsdale's Dwelling Policy are clear and unambiguous and have accorded these words their ordinary and plain meanings. In Coutu v. Exchange Insurance Co., 174 A.D.2d 241, 579 N.Y.S.2d 751 (3d Dep't 1992), the Appellate Division, Third Department, held that "[a]lthough the word 'unoccupied' is not defined in the policy, it must be given its ordinarily accepted meaning. The use of the building for storage would not create occupancy. It is the regular inhabitants that make

7

occupancy." Id. at 244.

In Hermann v. The Adriatic Fires Ins. Co., 85 N.Y. 162, 1881 NY LEXIS 65 (1881), the Court of Appeals held that for a dwelling to be occupied "it must be used by human beings as their customary place of abode, not absolutely and uninterruptedly continuous, but that must be the place of usual return and habitual stoppage." Id. at 169.

In Page v. Nationwide Mutual Fire Ins. Co., 15 A.D.2d 306, 223 N.Y.S.2d 573 (3d Dep't 1962), the Appellate Division, Third Department, held that "[i]t is the regular presence of inhabitants that makes occupancy." Id. at 307.

In Thieme v. Niagara Fire Ins. Co., 100 A.D. 278, 91 N.Y.S. 499 (1st Dep't 1905), the Appellate Division, First Department, stated that "the reasonable meaning to be given to ["vacant or "unoccupied"] seems to me to be that a house does not become vacant or unoccupied so long as there are persons living in the house for some portion of each day." Id. at 281.

In Lamoureux v. New York Central Mutual Fire Ins. Co., 244 A.D.2d 645, 663 N.Y.S.2d 914 (3d Dep't 1997), the Appellate Division, Third Department, stated that "[g]iving the word 'vacant' its plain and ordinary meaning, we find plaintiff's argument to be without merit [citations omitted]. Since plaintiff himself was never an inhabitant of the premises, the fact that he frequented the premises for the purpose of renovation is not germane to the issue of vacancy. Likewise, the presence of a few appliances and pieces of furniture in the premises is also not persuasive given plaintiff's testimony that the tenant removed all of his own personal property at the time of his move. Inasmuch as there is no ambiguity in the policy provisions, we find on the record before us that the premises were vacation within the meaning of the policy exclusion [citation omitted]. Accordingly, defendant's motion must be granted." Id. at 646.

8

Based on the foregoing cases, it is without doubt that plaintiffs' use of the subject dwelling for storage of his business equipment does not rise to the level of occupancy within the meaning of the Occupancy Endorsement of Scottsdale's Dwelling Policy.

Plaintiffs' reliance on the one case, <u>Gallo v. Travelers Property Casualty</u>, 21 A.D.3d 1379, 801 N.Y.S.2d 849 (4th Dep't 2005) in support of their argument that use of the property for commercial purposes constitutes occupancy, is wholly misplaced. (<u>See</u> Plaintiffs' Memorandum at p. 5-7). In <u>Gallo</u>, the Travelers' policy, unlike the Scottsdale policy, narrowly defined the word "vacant" to mean "a building is vacant if it 'does not contain enough business personal property to conduct customary operations.'" <u>Id.</u> at 1380). Likewise, the Travelers' policy specifically defined "unoccupied" to mean "contain[ing] personal property usual to the occupancy of the building while customary activity and operations are suspended.'" <u>Id.</u> Here, it is undisputed that Scottsdale's Dwelling does not define these terms. Thus, <u>Gallo</u> is not analogous to the case at bar and provides no support whatsoever to plaintiffs sole argument in opposition to Scottsdale's motion. (<u>See</u> Plaintiffs' Memorandum at p. 5-7).

Moreover, plaintiffs reliance on <u>McCarthy v. New York Property Ins. Underwriting Ass'n</u>, 158 A.D.2d at 962, <u>Seaboard Surety Co.</u>, 64 N.Y.2d at 311, and <u>Vigilant Ins. Co. v. V.I. Techs.</u>, 253 A.D.2d at 402, for the proposition that the "terms 'vacant' and 'unoccupied' cannot be reasonably interpreted by a policyholder to mean that business usage cannot form the basis of occupancy" is wholly misplaced. (<u>See</u> Plaintiffs' Memorandum at p. 5-7). These cases not only do not address this issue, but they certainly do not stand for the proposition cited for by plaintiffs.

Next, plaintiffs speculate that to adopt the definitions of occupancy as set forth by <u>Coutu</u> and <u>Hermann</u> would result in "all shopping centers, office buildings, courthouses and similar places [to

be] deemed unoccupied simply because no one lives there." (Id. at p. 7). This is absurd, devoid of

any common sense and reflects a lack of understanding of the difference between a dwelling policy

purchased for a two-family home, like here, and a commercial policy.

Plaintiffs further speculate that because "someone broke into the subject house several times

before the fire, and as recently as three weeks before the fire," (Plaintiffs' Memorandum at p. 3) and

the premises may have been used by "at least one person other that Mr. Eddie and his employees"

to dry marijuana (id. at p. 6), this somehow constitutes occupancy of the premises (id.). Not only

do plaintiffs fail to cite to any legal authority in support of this proposed legal proposition, there is

no factual basis for this claim. Indeed, plaintiffs fail to proffer any admissible evidence (e.g,

documentary evidence or corroborating testimony) showing that someone broke into the home (see

Scottsdale's Reply Statement) or that "someone other than Mr. Eddie and his employees" were using

the home to dry marijuana. Nonetheless, even if this Court were to accept these unsupported

allegations as true, there is simply no evidence that these purported trespassers or marijuana growers

were using the premises as their regular or customary place of abode so as to render the premises in

a state of occupation as a matter of law. See e.g. Hermann v. The Adriatic Fires Ins. Co., 85 N.Y.

162.

It is well settled that conclusory, self-serving, highly speculative allegations, such as those

proffered by plaintiffs here, are insufficient to defeat a motion for summary judgment. See e.g.

Zuckerman v. City of New York, et al., 49 N.Y.2d 557, 427 N.Y.S.2d 595 (1980); Montessi v.

American Airlines, Inc., 935 F.Supp. 482, 1996 U.S. Dist. LEXIS 12803 (S.D.N.Y. 1996) (holding

wholly subjective contentions concerning incidents that purportedly caused plaintiff's alleged injuries

uncorroborated by any evidence are insufficient to establish a genuine issue of material fact for trial),

10

citing <u>Wang v. New York City Department of Correction</u>, 1994 U.S. Dist. LEXIS 5010, 92 Civ. 0541, 1994 WL 150823, *4 (S.D.N.Y. April 20, 1994) (holding uncorroborated and conclusory allegations insufficient to withstand motion for summary judgment); <u>Economou v. Butz</u>, 466 F. Supp. 1351, 1357 (S.D.N.Y. 1979) (holding "bald conclusions" insufficient to defeat motion for summary judgment), <u>aff'd sub nom.</u>, <u>Economou v. U.S. Dep't of Agric.</u>, 633 F.2d 203 (2d Cir. 1980).

For the foregoing reasons, defendant Scottsdale respectfully requests that this Honorable Court grant its motion for summary judgment dismissing plaintiffs' complaint in its entirety, together with such costs, fees and disbursements, and such other and further relief as this Court deems just and proper.

Dated: Hawthorne, New York
      May 9, 2008

                        TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP
                        *Attorneys for Defendant Scottsdale Insurance Company*

            By: _____

              Meryl R. Lieberman (ML7317)
              Dawn M. Warren (DW5112)
              Mid-Westchester Executive Park
              Seven Skyline Drive
              Hawthorne, New York 10532
              Tel. No. (914) 347-2600

11

## CERTIFICATE OF SERVICE

I, Michelle Manzares, certify that on May 13, 2008, I served a copy of a **REPLY MEMORANDUM OF LAW IN SUPPORT OF SCOTTSDALE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT** upon the attorney(s) for the respective party(ies) in this action, at the address listed below, such address designated by said attorney for that purpose via **UNITED STATES POSTAL SERVICE**, by depositing same in a properly addressed wrapper, in an official depository under the exclusive care and custody of United States Postal Service.

TO:

      Basch & Keegan, Esq.
      Attorneys for Plaintiff
      Office and P.O. Box Address
      307 Clinton Avenue
      Kingston, New York 12402
      Tel. No. (845) 338-8884

_____
Michelle Manzares

Sworn to before me this
13th day of May 2008

_____
Notary Public

CLAUDINE N. BONCI
Notary Public, State of New York
No. 01BO5015056
Qualified in Westchester County
Commission Expires July 12, 20 11